UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NICO LEGRAND a/k/a TONY JONES,

                         Petitioner,

        – against –

WILLIAM LEE,
Superintendent, Green Haven Correctional Facility,

                         Respondent.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:_12/28/2016_

**REPORT AND
RECOMMENDATION**

13 Civ. 05282 (PKC) (KHP)

**TO:   THE HONORABLE P. KEVIN CASTEL, U.S.D.J.**

Petitioner Nico LeGrand a/k/a Tony Jones, proceeding *pro se*, filed a petition for writ of

habeas corpus (the "Petition") pursuant to 28 U.S.C. § 2254, challenging his conviction in New

York State Supreme Court, New York County, on one count of murder in the second degree and

his sentence to a prison term of 25 years to life.

Petitioner asserts four grounds for habeas relief:  (1) the jury verdict was contrary to the

weight of the evidence; (2) the trial court abused its discretion by excluding expert testimony on

the "weapon focus" effect[1] without holding a *Frye*[2] hearing; (3) the trial court erred in ruling that

the State would be permitted to introduce rebuttal evidence about the existence of a composite

sketch if Petitioner's expert testimony "opened the door" to its introduction, which Petitioner

---

[1] As explained by the New York Appellate Division, First Department, "'[w]eapon focus' is the phenomenon which occurs when, during the course of a crime, a witness is exposed to a weapon, and the witness focuses his or her attention on the weapon and not on the perpetrator's face, which allegedly impairs the ability of the witness to make a subsequent identification of the perpetrator."  *State v. LeGrand*, 94 A.D.3d 99, 103 (1st Dep't 2012) (citation omitted).

[2] *Frye* refers to *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923).  New York Courts have adopted the principles articulated in *Frye* for assessing whether proposed expert testimony is generally accepted in the relevant scientific community.  *See e.g. State v. Wernick*, 89 N.Y.2d 111, 115 (1996) ("[t]his Court has often endorsed and applied the well-recognized rule of *Frye v. United States*").

claims effectively precluded him from calling the expert witness; and (4) his Appellate Counsel was ineffective for failing to raise a claim of ineffective Trial Counsel on direct appeal.

Respondent opposes the Petition for writ of habeas corpus.  It first argues that Petitioner's "weight of the evidence" claim is unexhausted and, in any event, fails on the ground that it is based on state, not federal, law.  Respondent next asserts that Petitioner's two claims regarding the admissibility of expert testimony are unexhausted because he did not raise the federal nature of these claims with the state courts.  Respondent further argues that, even if these two claims are exhausted, they fail because Petitioner cannot establish that the trial court's evidentiary rulings ran afoul of settled federal law.  Finally, Respondent contends that Petitioner cannot establish that his Appellate Counsel's performance was "objectively unreasonable."

For the reasons that follow, this Court concludes that Petitioner's first three claims are unexhausted and procedurally barred and his fourth claim, though exhausted, fails on the merits. This Court therefore recommends that the writ be denied and the Petition dismissed.

## I.      FACTS AND PROCEDURAL HISTORY

The New York Court of Appeals ("Court of Appeals") has summarized the incident underlying Petitioner's conviction as follows:

> On the morning of June 15, 1991, livery cab driver Joaquin Liriano was stabbed to death on Morningside Drive in Manhattan. Liriano's assailant fled before the police arrived on the scene. Four people witnessed the attack, and within a few days collaborated on a composite sketch of the assailant. Two years later, defendant was identified as a possible suspect in the homicide when an officer who arrested him for an unrelated burglary concluded that he resembled the 1991 composite sketch. However, because the police were unable to find any of the witnesses to the stabbing, the homicide case stalled. The case remained dormant until April 1998 when defendant was again arrested for burglary in the same precinct. Police again concluded that he resembled the composite sketch.
>
> The authorities located the four witnesses who contributed to the composite sketch and one additional witness to the stabbing who was not identified until 1998. One

of the witnesses identified defendant as the killer in a photo array and a lineup. Two of the remaining witnesses were shown the photo array, but neither made a positive identification. Specifically, one witness picked out defendant's photo as a "close, if not exact" match. A third witness described defendant's picture as "similar" to that of the assailant. The fourth and fifth witnesses also examined the photo array, but were unable to identify defendant. There was no forensic or other physical evidence connecting defendant to the stabbing.  Defendant was charged with second degree murder in April 1999.

*State v. LeGrand ("LeGrand I")*, 8 N.Y.3d 449, 452-53 (2007).

A.  **Petitioner's First And Second Trials**

Petitioner's first trial ended in a mistrial following a hung jury.  Prior to Petitioner's second trial, Petitioner's trial counsel ("Trial Counsel") moved to proffer an expert witness to testify at trial about several issues related to witness identification, including weapon focus, confidential malleability, the relationship between confidence and accuracy, and the effect of post-event information on the accuracy of an identification.[3]  Following a *Frye* hearing, the trial court ruled that the proposed expert testimony would be excluded.  At the second trial, Petitioner's Trial Counsel introduced into evidence the composite sketch that the eyewitnesses assisted in preparing after the murder.  A jury found Petitioner guilty of second-degree murder, and he was sentenced to a prison term of 25 years to life.

The New York Appellate Division, First Department ("Appellate Division") affirmed the conviction.  *See State v. LeGrand,* 28 A.D.3d 318, 319 (1st Dep't 2006).  Petitioner sought and was granted leave to appeal to the Court of Appeals.  The Court of Appeals reversed his conviction and ordered a new trial on the grounds that it was an abuse of discretion for the trial

---

[3] "Confidential malleability" refers to "the proposition that [a]n eyewitness's confidence can be influenced by factors that are unrelated to identification accuracy. *State v. LeGrand*, 196 Misc.2d 179, 181 (Sup. Ct. N.Y. Cty. 2002).  The "relationship between confidence and accuracy" refers to "the relation[ship] between the accuracy of an eyewitness's identification and the confidence that [the] eyewitness expresses in the identification." *Id.* at 180-81. "Post-event information" refers to the theory that "[e]yewitness testimony about an event often reflects not only what [the eyewitness] actually saw but information they obtained later on." *Id.* at 181.

court to preclude the defense from introducing proposed expert testimony about the lack of correlation between confidence and accuracy of identification, confidence malleability, and the effect of post-event information on identification accuracy. *LeGrand I,* 8 N.Y.3d at 456-59. However, the Court of Appeals rejected Petitioner's argument that the trial court improperly excluded expert testimony about weapon focus, finding that Petitioner had failed to present sufficient evidence to establish that "the principles expounded by defendant's expert witness are generally accepted by the relevant scientific community." *Id.* at 458.

B. **Petitioner's Third Trial**

On remand, Petitioner was again represented by the same Trial Counsel.  In April 2008, while the case was pending retrial, Petitioner's Trial Counsel moved to introduce expert testimony about the weapon focus effect, as well as the three topics previously approved by the Court of Appeals.  Petitioner's Trial Counsel specifically requested that the trial court admit all of the proposed testimony without holding a *Frye* hearing.  As to the weapon focus testimony, Petitioner's Trial Counsel urged the court to take judicial notice of decisions from two other cases decided after *LeGrand I* where the courts found that the weapon focus theory was generally accepted in the relevant scientific community.  The prosecution opposed introduction of expert testimony on the weapon focus effect, arguing the Court of Appeals had held that this testimony was properly excluded in *LeGrand I.*  The prosecution further noted that, since *LeGrand I,* two other trial courts reached the opposite conclusion of the decisions proffered by Petitioner and had concluded after *Frye* hearings that the weapon focus theory was not generally accepted.

In August 2008, Justice Ronald A. Zweibel, the then-presiding Justice, denied Petitioner's motion to introduce expert testimony on the weapon focus effect, but without

prejudice to renew the application at trial.  The court ruled that Petitioner had not proffered sufficient information to re-open the *Frye* hearing, finding that "defendant has failed to even cite, let alone provide, this Court with any scientific studies in support of its proffer that expert testimony should be allowed as to the effect of weapon focus" and "has also failed to proffer an affidavit from the proposed expert as to what he would testify to and the basis of his testimony." (RA0065.)  Emphasizing that the Court of Appeals held in *Legrand I* that there was insufficient evidence to find that the theory was generally accepted in the scientific community, the court further stated that the other rulings from parallel courts permitting the weapon focus testimony were not binding and, in any event, the split in recent trial court decisions demonstrated the disagreement over whether weapon focus principles were in fact generally accepted.

On February 2, 2008, shortly before jury selection, Trial Counsel orally renewed Petitioner's application to introduce expert testimony on the weapon focus effect during a morning court conference.  Justice L. Bart Stone, who presided over the trial, instructed Petitioner's Trial Counsel to address whether a *Frye* hearing was requested that afternoon. During the afternoon court proceedings, Petitioner's Trial Counsel indicated that she intended to proffer evidence about the admissibility of the weapon focus expert testimony the next day.  The court ruled that Petitioner could raise the issue the following day and instructed Trial Counsel to provide it with any peer-reviewed findings regarding the weapon focus effect that were issued since Justice Zweibel's decision.  The court cautioned, however, that it was considering denying Petitioner's application because it was not made until the eve of trial.  The next day, Justice Stone denied Petitioner's request to conduct a *Frye* hearing.  Justice Stone explained that Petitioner had failed to identify any new studies that were unavailable at the time of Petitioner's prior motion and, therefore, Justice Zweibel's decision was the law of the case.

Justice Stone also ruled *in limine* that if the Petitioner's proposed expert witness were to testify about the effect of post-event information on the accuracy of eyewitness identifications,[4] then the prosecution would be permitted to elicit rebuttal testimony regarding the eyewitnesses' involvement in creating a composite sketch a few days after the incident.  Justice Stone explicitly stated that the composite sketch itself would not be admitted into evidence.  The court further ruled that it would issue a limiting instruction directing the jury to only consider the existence of the sketch for the purpose of assessing the expert's opinion that post-event information induced the subsequent in-court identification of the Petitioner.  As a result of this ruling, on the next day, Petitioner's Trial Counsel advised the court that she would not call the expert witness to testify about any of the subjects affecting eyewitness identification.  Petitioner's Trial Counsel submitted an affidavit to preserve her objections to the evidentiary ruling for appeal, explaining that "[b]ased on my experience at the prior trial, I have concluded that the prejudice that would result from introduction of the sketch would all but eviscerate the benefit of [the expert's] testimony."  (RA963.)

Petitioner's third trial began on February 4, 2009.  The prosecution introduced several witnesses, including eyewitnesses who identified Petitioner as the assailant.  During summation, Petitioner's Trial Counsel urged the jury to consider that the eyewitnesses were sincere but mistaken in identifying Petitioner.  Petitioner's Trial Counsel also argued that the witnesses' perception of the perpetrator had evolved as a result of post-event information.  On February 17, 2009, the jury found Petitioner guilty of second-degree murder.  The court subsequently

---

[4] Specifically, the prosecution contended that Petitioner's expert would testify about how certain intervening events, such as viewing a photo array containing a picture of Petitioner several years after the incident, could affect the eyewitnesses' ability to accurately recall a description of the perpetrator.

sentenced Petitioner to a prison term of 25 years to life, to be served consecutively with a term of incarceration imposed in a prior conviction.

Petitioner filed a notice of appeal with the Appellate Division.  Upon Petitioner's application to prosecute the appeal as a poor person, he was assigned new counsel for his appeal ("Appellate Counsel").  Petitioner's Appellate Counsel subsequently filed a 72-page brief on his behalf.  Petitioner raised three arguments on appeal: (1) that his conviction was against the weight of the evidence; (2) that he was denied a fair trial when the trial court effectively precluded him from proffering expert witness testimony; and (3) that the trial court erroneously denied his motion to introduce expert testimony about weapon focus without holding a *Frye* hearing.  In his brief, Petitioner cited to the state and federal Constitution in each of his point headings.  Thereafter, the prosecution filed an opposition brief, and Petitioner filed a 23-page reply brief.

On March 8, 2012, the Appellate Division affirmed Petitioner's conviction and sentence. *State v. LeGrand,* 94 A.D.3d at 100-101.  With respect to the specific issues Petitioner raised on appeal, the Appellate Division first held that the conviction was not against the weight of the evidence.  *Id.* at 100.  As to the trial court's ruling that it would permit rebuttal testimony concerning the composite sketch if Petitioner "opened the door" to it through his expert's testimony about post-event information, the Appellate Division held that the ruling was not unduly prejudicial.  *Id.* at 101.  Its rationale was that the rebuttal testimony would have been admitted for the "limited purpose of allowing the People to address a potentially misleading impression" created by the defense.  It also reasoned the rebuttal testimony's impact would be mitigated by a limiting instruction directing the jury as to the limited purpose for which the composite sketch's existence could be considered.  *Id.*  Finally, the Appellate Division held that

the proposed weapon focus testimony had little relevance under the circumstances of the case and, thus, the exclusion of the testimony did not deprive Petitioner of a fair trial. *Id.* at 100-01. The Appellate Division explained that the exclusion of the weapon effect testimony was "at most harmless error" because the three eyewitnesses had several minutes to observe the perpetrator, including a period of time after the attack, and none of the witnesses were within the "zone of danger" of the weapon. *Id.* at 103-04.

Petitioner subsequently sought leave to appeal to the Court of Appeals on or about April 5, 2012. In his first letter to the Court of Appeals, Petitioner noted "[e]nclosed are a copy of the decision and the briefs," ostensibly in reference to documents from the proceedings before the Appellate Division. In a second letter to the Court of Appeals dated April 23, 2012, Petitioner set forth three specific "Issues for Appeal": (1) it was error for the trial court to effectively preclude the defense's proposed expert testimony with its evidentiary ruling; (2) it was error for the trial court to deny a pretrial *Frye* hearing on weapon focus testimony; and (3) it was error for the Appellate Division to uphold the denial of a *Frye* hearing on the weapon focus testimony on relevance grounds. On June 29, 2012, the Court of Appeals denied Petitioner's request for leave to appeal.

Petitioner then sought reconsideration of the denial of his application for leave. On September 12, 2012, the Court of Appeals denied his motion for reconsideration.

### C. **Petitioner's Application For Writ Of Error *Coram Nobis* And Petition For Writ Of Habeas Corpus**

By application dated June 13, 2013, Petitioner sought a writ for error *coram nobis* with the Appellate Division on the grounds that his Appellate Counsel was ineffective for failing to raise the claim of ineffective assistance of Trial Counsel. Petitioner specifically contended that his Trial Counsel provided him ineffective assistance when she refused to call the defense expert

witness to the stand following the trial court's evidentiary ruling.  According to Petitioner, his

Trial Counsel should have called the expert witness to testify and then should have made an

appropriate objection as to the admittance of the composite sketch.

While Petitioner's application for writ of error *coram nobis* was pending before the

Appellate Division, Petitioner sought a writ of habeas corpus from this Court.  In his *pro se*

Petition filed on July 25, 2013, Petitioner asserted four bases for habeas relief: (1) that his

conviction was against the weight of the evidence; (2) that the trial court abused its discretion by

excluding expert testimony on the weapon focus effect without holding a *Frye* hearing; (3) that

he was denied a fair trial as a result of the court's evidentiary ruling that the prosecution would

be permitted to introduce rebuttal testimonyabout the creation of a composite sketch if his expert

"opened the door" to such rebuttal testimony; and (4) that his Appellate Counsel was ineffective

for failing to raise the issue of ineffective Trial Counsel on direct appeal.  On August 28, 2013,

Petitioner's application was stayed pending his exhaustion of his ineffective assistance of

counsel claim in state court.  (Doc. No. 5.)

By decision and order dated December 12, 2013, the Appellate Division denied

Petitioner's application for writ of error *coram nobis*.  Petitioner sought leave to appeal the

Appellate Division's denial of his ineffective assistance claim, which the Court of Appeals

denied on July 24, 2014.

On March 30, 2015, this Court issued an order lifting the stay of Petitioner's habeas

application.  Respondent subsequently filed a response and memorandum of law in opposition to

the Petition.  Petitioner also filed a reply brief in further support of his application for writ of

habeas corpus.

## II.    LEGAL PRINCIPLES APPLICABLE TO THIS HABEAS PETITION

### A.  *Standard For Habeas Review*

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 562 U.S. 86, 97 (2011).  A state prisoner can obtain federal habeas relief only by showing that the state court's decision was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or resulted in a decision that was based on an unreasonable determination of the facts presented to the state court.  28 U.S.C. § 2254(d)(1)-(2).

"To be 'contrary to' clearly established law, a state court must reach a conclusion of law antithetical to a conclusion of law by the Supreme Court, or decide a case differently than the Supreme Court has when the two cases have 'materially indistinguishable facts.'" *Rosario v. Ercole*, 601 F.3d 118, 123 (2d Cir. 2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring)).  In the AEDPA context, "clearly established" law refers to "only the holdings, as opposed to the dicta, of th[e] [Supreme] Court's decisions." *Woods v. Donald*, 135 S.Ct. 1372, 1376 (2015) (citation omitted).  It is not enough that the facts of a case are "similar to" those at issue in the relevant Supreme Court case—the two cases must involve the same specific question.  *Id.* at 1377.

Once the clearly established Supreme Court holding has been distilled, "an 'unreasonable application of' those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Id.* at 1376.  To satisfy the high bar for habeas relief, a petitioner must establish that "the state court's ruling on the claim being presented in federal court was so

lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.

B. ***Exhaustion And Procedural Default***

Prior to seeking federal habeas review, petitioner in state custody is required to exhaust all remedies available in state court.  28 U.S.C. § 2254(b)(1).  *See also Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014).  This means that a petitioner "must give the state courts *one full opportunity* to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (emphasis added).  A "complete round," *id.*, requires the petitioner to present the "essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it."  *Jackson*, 763 F.3d at 133 (citation omitted).  The exhaustion requirement ensures that state prisoners fairly present their federal constitutional claims to the state courts in the first instance.  *Id.* at 132.  *See also Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011) ("[t]he exhaustion requirement is animated by notions of comity between the federal and state judicial systems") (internal citations omitted).

When a habeas petition presents unexhausted claims, the federal court must determine whether the petitioner would be able to return to state court to exhaust the claims.  *Jackson*, 763 F.3d 133.  If the petitioner's claim is unexhausted and the petitioner cannot obtain further review of those claims in state court for procedural reasons, then the federal court must deem the claim procedurally defaulted.  *Carvajal*, 633 F.3d at 104 (quoting *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir.2001)).  *See also Jackson*, 763 F.3d at 133 ("if the state prisoner fails to exhaust his state remedies in a manner in which, were he to return to the state courts with his unexhausted claim, those courts would find the claim barred by the application of a state procedural rule, we

must deem the claim procedurally defaulted") (internal quotations omitted).  The only exceptions

to this rule are if the petitioner establishes either "cause for the default and prejudice" or that he

is "'actually innocent' of the crime for which he was convicted."  *Carvajal*, 633 F.3d at 104.

### III.  ANALYSIS OF PETITIONER'S CLAIMS

A.  ***"Weight Of The Evidence"***

Petitioner first seeks habeas relief on the grounds that his conviction was contrary to the

weight of the evidence.  Respondent correctly contends that Petitioner has failed to exhaust this

claim.  This Court may not consider Petitioner's "weight of the evidence" claim because it has

not been fairly presented to the state courts.  *See* 28 U.S.C. § 2254(b)(1); *Jackson*, 763 F.3d at

133.

As explained above, prior to seeking habeas relief, a state prisoner must invoke "one

complete round" of appellate review by appealing first to the Appellate Division, and then

seeking leave to appeal to the State Court of Appeals.  *Galdamez v. Keane*, 394 F.3d 68, 74 (2d

Cir. 2005).  The Court of Appeal's procedural rules require that a criminal leave application

identify "the grounds upon which leave to appeal is sought," as well as annex copies of the

submissions and relevant decision from the Appellate Division.  22 N.Y.C.R.R. § 500.20(a)-(b).

Petitioner's application for leave to appeal to the State Court of Appeals set forth three

specific grounds for appeal, all of which pertained to the trial court's rulings on the admissibility

of Petitioner's proposed expert witness.  Conspicuously absent from Petitioner's letter to the

Court of Appeals, however, was any mention of a claim that the jury verdict was contrary to the

weight of the evidence.  Although Petitioner raised his "weight of the evidence" claim before the

Appellate Division, his failure to present the issue to the Court of Appeals review renders his

claim unexhausted.  *See Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991) (holding that petitioner

did not "fairly apprise" the state court of two of his claims where his submission to the Court of Appeals consisted of his Appellate Division brief and a letter that only argued one of the three issues presented to the Appellate Division because the Court of Appeals does not have "a duty to look for a needle in a paper haystack") (citation omitted).

Since Petitioner failed to exhaust this claim, the Court must then determine whether Petitioner would be able to return to state court to exhaust it.   This Court concludes that he could not.   Petitioner has already filed the one application for leave to appeal to the Court of Appeals, and New York's procedural rules preclude any further applications.   *See* N.Y.C.R.R. § 500.20(a)(2).   Petitioner's arguments also do not present any basis for collateral post-conviction review in the state courts.   *See e.g.* N.Y. C.P.L. § 440.10(2)(c) (motions to vacate the judgment cannot be premised on record-based claims that could have been raised on direct appeal);  N.Y. C.P.L. § 440.20(2) (motion to set aside a criminal defendant's sentence must be denied when issue raised was previously determined on the merits on direct appeal).   Thus, Petitioner's "weight of the evidence" claim is procedurally defaulted.   *Jackson*, 763 F.3d at 133.   Petitioner presents no basis to overcome this procedural bar.   He offers no "cause for the default and prejudice."   *Carvajal*, 633 F.3d at 104.   Nor has he shown that he is "actually innocent" of the underlying crime.   *Id.*   Accordingly, Petitioner's claim that his conviction is against the weight of the evidence must be dismissed.[5]

---

[5] Even assuming Petitioner's weight of the evidence claim was properly exhausted, he still would not be entitled to habeas relief on this ground.  A habeas petitioner's argument that a conviction is contrary to the weight of the evidence states a claim under state law, which is not cognizable via a petition for habeas corpus.  *See Garrett v. Perlman*, 438 F. Supp. 2d 467, 470 (S.D.N.Y. 2006) ("[u]nlike a sufficiency of the evidence claim, which is based upon federal due process principles, a weight of the evidence claim is 'an error of state law, for which habeas review is not available'").  *See also McKinnon v. Superintendent, Great Meadow Corr. Facility,* 422 F. App'x 69, 75 (2d Cir. 2011); *Espada v. Lee*, No. 13-cv-8408 (LGS)(SN), 2016 WL 6810858, at *4 (S.D.N.Y. Nov. 16, 2016).

B. ***Rulings Regarding Petitioner's Proposed Expert Testimony***

Respondent contends that Petitioner's second and third grounds for habeas relief fail for the same reason as his first claim—that is, that Petitioner's challenges to the trial court's rulings regarding his proposed expert witness are unexhausted because Petitioner failed to properly assert the federal nature of his claims before the state courts. As noted above, the exhaustion requirement mandates that a habeas petitioner "fairly present" his federal claim to the state courts to afford them the "the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Carvajal*, 633 F.3d at 104 (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam)). Although a habeas petitioner is not required to cite "chapter and verse of the Constitution" in his state court submissions to satisfy this requirement, he still must present his claims in a manner that will likely alert the state courts as to the federal nature of his claims. *Jackson*, 763 F.3d at 133 (citation omitted). A state prisoner can fulfill his fair presentment obligations in several ways, including by:

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Daye v. Att'y Gen. of State of N.Y.*, 696 F.2d 186, 194 (2d Cir. 1982). *See also Carvajal,* 633 F.3d at 104.

Applying *Daye* and its progeny, this Court cannot conclude that Petitioner fairly presented his *federal* law claims to the Court of Appeals. Petitioner's arguments on direct appeal addressed the issue of whether the trial court appropriately applied state law governing the admissibility of expert testimony. In his letter to the Court of Appeals, Petitioner argued at length that the trial court's evidentiary ruling that the prosecution would be permitted to

introduce rebuttal testimony about the composite sketch if the defense expert "opened the door" to it was contrary to the Court of Appeal's decision in *State v. Maldonado*, 97 N.Y.2d 522 (2002).  In *Maldonado*, the Court of Appeals addressed the parameters for admitting a composite sketch as an exception to New York's hearsay rule, as defined by prior state law precedent.  97 N.Y.2d at 528-31.  *Maldonado* does not contain any discussion of federal constitutional issues or rights, nor do any of the other state court decisions cited by Petitioner in his appellate brief.  *See generally Carvajal*, 633 F.3d at 106-07.  Petitioner also did not cite federal law or cases or assert his claims concerning the state court's evidentiary rulings in a way that invoked a specific constitutional right or presented a fact pattern that is in the settled "mainstream of constitutional litigation."  *Daye*, 696 F.2d at 194.  *See also Carvajal*, 633 F.3d at 106-07.

This Court notes that Petitioner cited to the Constitution in the point headings of his Appellate Division brief, but his letter to the Court of Appeals did not contain any citations to the federal Constitution or federal law.  Further, although Petitioner's Appellate Division briefs were submitted to the Court of Appeals, merely enclosing prior briefs that mention a potential federal issue is insufficient to alert the Court of Appeals of alleged violations of the federal Constitution.  *Brown v. Senkowski*, 152 F. App'x 15, 18 (2d Cir. 2005).  *See also Grey*, 933 F.2d at 120.  In *Diguglielmo v. Senkowski*, 42 F. App'x 492 (2d Cir. 2002), the Second Circuit was confronted with facts very similar to those presented in this Petition.  In *Diguglielmo*, the petitioner had referenced specific provisions of the federal Constitution and cited to federal cases in his Appellate Division submissions, but his leave application to the Court of Appeals only addressed his state laws claims.  *Id.* at 495.  His leave application "cited no federal cases whatsoever, failed to identify any federal constitutional provision, and never explicitly set forth the elements of any federal constitutional doctrine."  *Id.*  The Second Circuit held that the petitioner had failed to

fairly present his federal claims to the state court, expressly rejecting the petitioner's argument

that he had exhausted his claims by annexing his prior submissions to his Court of Appeals leave

application.  *Id.* at 495-96 (citing *Jordan v. LeFevre*, 206 F.3d 196, 198-99 (2d Cir. 2000)

("attaching an appellate brief without explicitly alerting the state court to each claim raised does

not fairly present such claims for purposes of the exhaustion requirement underlying federal

habeas jurisdiction")).

Like the petitioner in *Diguglielmo*, Petitioner's generalized assertion that the trial court's

evidentiary ruling "deprived [him] of a fair trial" in his letter to the Court of Appeals was

insufficient to apprise that court of his federal claims.  A petitioner must do more than merely

make a "general appeal to a constitutional guarantee as broad as due process to present the

'substance' of such a claim to a state court." *Gray v. Netherland,* 518 U.S. 152, 163 (1996).  *See*

*also Smith v. Duncan*, 411 F.3d 340, 348-350 (2d Cir. 2005) (holding that the petitioner's state

court argument that he was "denied a 'fair trial'" was insufficient to alert the state court to his

federal constitutional claims).  Thus, Petitioner failed to exhaust his federal claims by "fairly

present[ing]" them to the Court of Appeals.  *Duncan*, 513 U.S. at 365-66.

And, as is the case with his "weight of the evidence" claim, Petitioner's challenges to the

rulings on expert testimony are procedurally defaulted because he already made his one

application to the Court of Appeals and has no further outlets for relief in the state court system.

*Carvajal*, 633 F.3d at 104.  Petitioner has not argued cause for his default and prejudice.  *Id.*  Nor

has he demonstrated a fundamental miscarriage of justice that would warrant a review of these

claims on the merits.  *Id.*  Thus, Petitioner's second and third bases for habeas review must be

dismissed.[6]  *See Jones v. Murphy*, 694 F.3d 225, 248 (2d Cir. 2012).

---

[6] Even if this Court were to analyze the merits of Petitioner's claims that the trial court erred in precluding or
"effectively precluding" the testimony of his expert witness, Petitioner cannot establish that the state court's

C. *__Ineffective Assistance Of Appellate Counsel__*

Petitioner's fourth basis for habeas relief is a claim that his Appellate Counsel was "ineffective" for failing to raise a claim for ineffective assistance of Trial Counsel in his Appellate Division brief.  Petitioner argues that Trial Counsel's decision not to call an expert witness to testify at trial deprived him of his "constitutional right to present a defense," and that he consequently received ineffective assistance of counsel when his Appellate Counsel did not brief this issue on direct appeal.

As a threshold matter, this Court must determine if Petitioner has exhausted his state court remedies with respect to his ineffective assistance of counsel claim.  28 U.S.C. § 2254(b)(1).  Through its Answer in opposition to the Petition, Respondent appears to concede that Petitioner's fourth claim is fully exhausted.  *See* 28 U.S.C. § 2254(b)(3) (The "State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement").  The issue of whether Respondent has explicitly waived the exhaustion requirement as to this claim need not be decided, however, because this Court finds that Petitioner fairly presented his ineffective assistance claim to the state courts when his *pro se coram nobis* submissions are viewed in the light most favorable to Petitioner.  *See e.g. Lewis v. Conn. Comm'r of Corr.*, 790 F.3d 109, 120 (2d Cir. 2015).  In particular, Petitioner raised his ineffective assistance of Appellate Counsel claims to the Appellate Division and then to the Court of Appeals.  He advised the Court of

decision was antithetical to "clearly established" federal law.  28 U.S.C. § 2254(d).  As numerous courts in this Circuit have noted, the Supreme Court has not yet ruled on the issue of whether the exclusion of expert testimony on eyewitness reliability amounts to a violation of a defendant's constitutional rights.  *See e.g. Perez v. Graham*, No. 13-cv-1428 (WHP)(GWG), 2014 WL 523409, at *10 (S.D.N.Y. Feb. 5, 2014) (collecting cases); *Smith v. Graham*, No. 10-cv-3450 (JPO)(THK), 2012 WL 2428913, at *6-7 (S.D.N.Y. May 7, 2012) ("[t]here is no clearly established right under the federal Constitution to call an expert witness concerning the reliability of eyewitness testimony"); *Hall v. Lee*, No. 15-cv-2559 (LGS)(KNF), 2016 WL 4597624, at *4 (S.D.N.Y. Sept. 1, 2016).  Thus, the Appellate Division could not have unreasonably applied the holding of the Supreme Court in rejecting Petitioner's challenges to the rulings concerning expert witness testimony.

Appeals that Appellate Counsel "admitted" that his "right (Constitutional) to present a defense was not raised at trial nor on appeal" and that Appellate Counsel stated that she "could not raise an ineffective argument against [another] Legal Aid lawyer."  This is the same argument that Petitioner advances in his federal habeas Petition.  *See also Twitty v. Smith*, 614 F.2d 325, 332 (2d Cir. 1979) (holding that petitioner fairly presented his Sixth Amendment claims to the state court by mentioning "effective assistance of counsel").  Accordingly, Petitioner has exhausted his fourth claim in the Petition.

The Appellate Division's decision on Petitioner's application for a writ of error *coram nobis* represents the last-reasoned state court decision to address his claim of ineffective assistance of counsel.  Although the Appellate Division's decision simply stated that Petitioner's requested was denied, summary dispositions are considered to be 'on the merits' for AEDPA purposes, absent circumstances that are not present in this case.  *Chrysler v. Guiney*, 806 F.3d 104, 117 (2d Cir. 2015) (citing *Harrington*, 562 U.S. at 99-100).   Accordingly, the AEDPA's deferential standard—that is, whether the Appellate Division's denial of Petitioner's application for writ of error *coram nobis* was either contrary to, or an unreasonable application of, clearly established federal law or was based on an unreasonable determination of facts—applies to the review of the Petition before this Court.  *See id.*

1. *Legal Standard Governing Ineffective Assistance Of Counsel Claims In A Habeas Petition*

The Sixth Amendment of the U.S. Constitution provides that a criminal defendant "shall enjoy the right ... to have the Assistance of Counsel for his defence."  U.S. CONST. amend. VI.  A criminal defendant also has the constitutional right to effective assistance of counsel in connection with the direct appeal of his conviction.  *See Evitts v. Lucey,* 469 U.S. 387, 395-97 (1985).

Habeas petitions asserting claims for ineffective assistance of counsel are analyzed under the "clearly established" federal law set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See also Chaidez v. United States*, 133 S.Ct. 1103, 1107-08 (2013) (noting that *Strickland* "provides sufficient guidance for resolving virtually all claims of ineffective assistance, even though their particular circumstances will differ" (internal quotation marks omitted)). Under *Strickland*, a petitioner claiming ineffective assistance of counsel in violation of the Sixth Amendment must establish both elements of a two-pronged test: (1) that his counsel's representation "fell below an objective standard of reasonableness," and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 688, 692-94.[7] *See also Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (articulating that *Strickland* applies to claims of ineffective appellate counsel, as well as ineffective trial counsel).

Under the first prong of the *Strickland* test, counsel is considered ineffective when his or her efforts fall "'below an objective standard of reasonableness.'" *Williams*, 529 U.S. at 390-91 (quoting *Strickland*, 466 U.S. at 688). Petitioner bears the burden of demonstrating that counsel's errors were "so serious that counsel was not functioning as the counsel guaranteed [to] the defendant by the Sixth Amendment." *Harrington*, 562 U.S. at 104 (citation omitted). This standard is intentionally high because ineffective assistance claims "are quite often the law's equivalent of 'buyer's remorse' or 'Monday morning quarterbacking' ... [and d]ecisions by

---

[7] The Court in *Strickland* explained that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. The Court further acknowledged that "[t]here are countless ways to provide effective assistance in any given case," and that "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." *Id.* at 689.

criminal defense counsel are often choices among bad alternatives ...." *Mui v. United States*, 614 F.3d 50, 57 (2d Cir. 2010).

A defendant can demonstrate prejudice by proving that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Williams*, 529 U.S. at 391 (2000) (quoting *Strickland,* 466 U.S. at 694) (internal quotations omitted).  Thus, to establish prejudice under *Strickland* in the appellate context, "a petitioner must show that, had his claim been raised on appeal, there is a reasonable probability that it would have succeeded before the state's highest court." *Lynch v. Dolce*, 789 F.3d 303, 311 (2d Cir. 2015).

When the "highly deferential" *Strickland* standards and § 2254 interact, habeas review is "doubly" deferential. *Harrington*, 562 U.S. at 101 ("[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision.").  Thus, the question before a federal court confronted with a habeas petitioner's claim of ineffective appellate counsel becomes "whether there is any reasonable argument that [the petitioner's appellate] counsel satisfied *Strickland*'s deferential standard." *Id*. at 105.  *See also Chrysler*, 806 F.3d at 118.

### 2.  *Application Of Strickland To Petitioner's Claim*

Under these guiding principles, this Court concludes that the Appellate Division's denial of Petitioner's ineffective assistance of Appellate Counsel claim was neither contrary to, nor an unreasonable application of, *Strickland.*

First, Petitioner cannot meet his burden of establishing prejudice, which requires him to show that the outcome of his direct appeal would have likely differed if his Appellate Counsel had raised the issue of ineffective Trial Counsel. *Lynch*, 789 F.3d at 311. "Where, as here, a petitioner has asserted that appellate counsel provided ineffective assistance by failing to raise as a ground for relief on appeal trial counsel's ineffective assistance, he or she must necessarily establish that trial counsel was ineffective." *Finley v. Graham*, No. 12-cv-9055 (KMK)(PED), 2016 WL 47333, at *13 (S.D.N.Y. Jan. 4, 2016) (citing *Rolling v. Fischer,* 433 F. Supp. 2d 336, 351 (S.D.N.Y. 2006) ("[T]here can be no claim of ineffective assistance of appellate counsel where the underlying claims of ineffective assistance of trial counsel are themselves meritless.")). Here, Petitioner has not demonstrated that Trial Counsel's decision not to call an expert witness fell below an objective standard of reasonableness.

The Second Circuit has held that "[a]ctions or omissions by counsel that might be considered sound trial strategy do not constitute ineffective assistance," and "counsel's decision as to whether to call specific witnesses – even ones that might offer exculpatory evidence – is ordinarily not viewed as a lapse in professional representation. " *United States v. Best*, 219 F.3d 192, 201 (2d Cir. 2000) (internal quotations omitted). This is because defense attorneys must make tactical decisions in almost every trial about whether to call witnesses and if so, which witnesses to call. *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987). *See also United States v. DeJesus*, 57 F. App'x 474, 478 (2d Cir. 2003) (holding that trial counsel's performance was not ineffective under *Strickland* where defendant's counsel decided not to a call a character witness in light of the trial court's ruling that the Government could introduce evidence about defendant's criminal record if defendant "opened the door" with testimony about

his good character).  Further, "[t]here is no *per se* rule that requires trial attorneys to seek out an

expert."  *Gersten v. Senkowski*, 426 F.3d 588, 609 (2d Cir. 2005).

In this case, Petitioner's Trial Counsel made the reasonable strategic decision not to call

an expert following the trial court's ruling that the proffered expert testimony could "open the

door" to the admission of evidence concerning the creation of the composite sketch.

Significantly, Trial Counsel had represented Petitioner in his prior trial in which the composite

sketch was introduced and that trial resulted in the jury finding Petitioner guilty of second-degree

murder.  The record reflects that this prior trial experience directly influenced Trial Counsel's

decision not to call the witness.  Trial Counsel explained in an affidavit that "[b]ased on my

experience at the prior trial, I have concluded that the prejudice that would result from the

introduction of the sketch would all but eviscerate the benefit of [the eyewitness expert's]

testimony."  (RA963.)  The record also shows that Trial Counsel's decision was not made under

circumstances that suggest it was a rash decision.  Rather, the trial court issued its evidentiary

ruling and it was not until the next day that Trial Counsel advised the court that Petitioner would

not be calling an expert witness.  Furthermore, Petitioner's Trial Counsel inquired during the

motion *in limine* hearing whether she would be allowed to argue the photo array contributed to

the eyewitness' mistaken identification in her summation without opening the door to rebuttal

evidence about the sketch.  The court advised Petitioner's Trial Counsel that it would allow her

to make this argument without the risk of rebuttal evidence concerning the composite sketch

being admitted.  Ultimately, Petitioner's Trial Counsel argued in her closing that the post-event

identification processes affected the eyewitnesses' memories, which lead to a mistaken

identification.  This sequence of events further indicates that Petitioner's Trial Counsel weighed

the options for how best to present the defense's mistaken identification theories while

minimizing the likelihood that the jury would learn about the composite sketch, which she clearly perceived to be harmful to Petitioner based upon her experience at the prior trial.  Under such circumstances, Petitioner has failed to establish that his Trial Counsel's determination not to call an expert witness in his case fell outside of the "wide range of professionally competent assistance."  *Strickland*, 466 U.S. at 690.  *See also United States v. Eyman*, 313 F.3d 741, 743 (2d Cir. 2002) ("failure to call a witness for tactical reasons of trial strategy does not satisfy the standard for ineffective assistance of counsel").

Even aside from the issue of whether Petitioner's Trial Counsel's efforts were constitutionally sufficient, Petitioner has not demonstrated that his Appellate Counsel's performance was ineffective under *Strickland*.  The Supreme Court has articulated that "appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal."  *Chrysler*, 806 F.3d at 118 (quoting *Smith v. Robbins*, 528 U.S. 259, 288 (2000)).  For example, an appellate counsel's efforts may be ineffective if counsel fails to raise a significant issue, "while pursuing issues that [are] clearly and significantly weaker."  *Lynch*, 789 F.3d at 312.  In connection with the direct appeal, Appellate Counsel filed a 72-page Appellant brief and a 23-page reply brief that primarily focused on the arguments that the trial court improperly excluded Petitioner's proposed expert testimony.  The briefs contain robust argument and thoughtful analysis of the applicable legal authority.  Significantly, Petitioner continues to advance the same arguments made in his Appellate Division submissions in this habeas Petition, which shows that Petitioner himself does not believe that the legal claims raised in his direct appeal were insignificant or weak.

There also could be other strategic reasons as to why Appellate Counsel opted not to raise the claim of ineffective Trial Counsel on direct appeal.  For example, New York courts have held that claims of ineffective trial counsel may be unreviewable on direct appeal when the trial record does not contain sufficient information to probe defense counsel's thought process and conversations with the defendant regarding trial strategy.  *See e.g. State v. Gravino*, 14 N.Y.3d 546, 558 (2010) ("as the Appellate Division pointed out, Gravino's claim of ineffective assistance of counsel brings up matters not apparent from the face of the record, which are therefore properly fleshed out by affidavit in support of a CPL 440.10 motion rather than raised on direct appeal."); *State v. Acevado*, 112 A.D.3d 454, 455 (1st Dep't 2013).  In light of this line of precedent, a fairminded jurist could conclude that there was no reasonable probability that the Appellate Division would have addressed Petitioner's claim of ineffective assistance of Trial Counsel on direct appeal even if it had been briefed.  *See Sparks v. Burge*, No. 06-cv-6965 (KMK)(PED), 2009 WL 8690118, at *7 (S.D.N.Y. Sept. 23, 2009) ("[i]n New York, ineffective assistance claims based upon matters outside the record are not cognizable on direct appeal…so appellate counsel can hardly be faulted for failure to raise such a claim").

Given that "[j]udicial scrutiny of counsel's performance must be highly differential," *Strickland*, 466 U.S. at 689, this Court cannot say that Petitioner's Trial Counsel was ineffective for electing not to call an expert witness, much less that the Appellate Division's decision denying Petitioner's error *coram nobis* claims of ineffective Appellate Counsel was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

## IV.    CONCLUSION

For the foregoing reasons, this Court concludes, and respectfully recommends, that the

habeas Petition should be dismissed in its entirety.


Date:   December 28, 2016
        New York, New York

*Katharine H Parker*
_____
KATHARINE H. PARKER
United States Magistrate Judge


**NOTICE**

**The Petitioner shall have seventeen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure (*i.e.,* until January 16, 2017).  *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days only when service is made under Fed. R. Civ. P. 5(b)(2)(C) (mail), (D) (leaving with the clerk), or (F) (other means consented to by the parties)).  The Respondent shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure (*i.e.,* until January 11, 2017).**

**If the Petitioner files written objections to this Report and Recommendation, the Respondent may respond to the Petitioner's objections within fourteen days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  Alternatively, if the Respondent files written objections, the Petitioner may respond to such objections within seventeen days after being served with a copy.  Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a), (d).  Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable P. Kevin Castel at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b).  Any requests for an extension of time for filing objections must be addressed to Judge Castel.  The failure to file these timely objections will result in a waiver of those objections for purposes of appeal.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn*, 474 U.S. 140 (1985).**

---

**A copy of this Report and Recommendation has been mailed to:**

**Nico LeGrand a/k/a Tony Jones**
99-A-1001

**Wende Correctional Facility**
3040 Wende Road
Alden, New York 14004-1187